Mr. Anderson, good morning. Welcome. Please proceed. May it please the Court, under the Supreme Court's decision in Bird Cell, Transclean is entitled to sue the infringing users of its patented invention because it has not collected any part of its judgment against the infringing manufacturer. Has the appellant made efforts to collect judgment? Where does that stand? As this Court noted in the first Bridgewood case, Bridgewood sold its assets and went out of existence. Right. When it sold its assets, it also presumably sold its liabilities. Why haven't you gone after Century? Century was an asset sale alone. Century did not acquire any of the liability in this case. Where did the liabilities go and where is the money that Bridgewood collected? It is in some very large houses of the shareholders of Bridgewood that are located in Florida. And under Florida law, there is nothing that we can do about it. These are homestead exempt? Yes, sir. Because Transclean, as I said, is just like the Bird Cell case, there has been no recovery of actual damages against the manufacturer. Can I ask you another question, just sort of at the outset, because this frames the case, at least for me? I found one peculiar aspect of this case, and you may be able to explain why it's not peculiar, to be the treatment of the term privity between the parties. I hate the term, I have to confess, because it seems to me that Wright and Miller have it right when they say that that the particular party will be bound. It doesn't give you any more information than the final conclusion, and it gets expanded or contracted, factually, to accord with that ultimate legal conclusion. However, you have acknowledged privity in this case between the purchasers and the seller, normally, not exclusively, but normally not an assumption that I would make as a place to find privity. In other words, if I go to buy a lawnmower from Sears, I don't think Sears and I are in privity, with respect to the question, for example, as to whether the lawnmower infringes somebody else's patent. Why have you conceded privity, and should we hold you to that concession for purposes of claim construction, claim preclusion? Well, the fact of the matter is, privity has been used in this case in differing ways, and we have consistently said that if you were to apply the general law of judgments, that the participating appellees, such as Jiffy Lube, are not in privity with Bridgewood. We said that in the district court when we distinguished the Mars decision under the general law of judgments, and we said specifically, and this is at appendix pages 670 and 71, we said that it's not a parent-subsidiary relationship, that Jiffy Lube did not control Bridgewood, that they did not finance the litigation, they were not controlling the defense, and we said that again at page 29 of our appellate brief. And I agree with you. But hold on just a minute, because I want you to explain this to me. On page 25 of your brief, you go through the four elements of claim preclusion, and then you say, as the district court correctly noted, and as they admitted themselves, the participating appellants have a special relationship of privity with Bridgewood. I mean, you're suggesting privity, right? There it is, as you said, and as this court said, in the Mars case, you know, the word privity doesn't tell you too much, and I will certainly concede that it is not a very clear discussion of privity, because we did say on page 29 of the brief, we distinguished privity under the general law of judgments, such as was found in the Mars case, between the parent and subsidiary there, and pointed out that in this case, Bridgewood and Jiffy Lube and the other participating appellees were not in that sort of special relationship that the court found to exist in Mars. Well, why are you arguing about privity at all? That's exactly—we have always said that this is bird cell. Why are you arguing bird cell? Why don't you just argue normal patent law, that you have different infringers, different acts of infringement? Of course they're not precluded. And we did argue that, Your Honor. Well, I don't think so. You seem to be arguing as if your client had said, look it, if this case goes to trial, you're not getting paid. If you can win on summary judgment, you'll get paid. And so you're trying to ride two horses where you say, well, they lose on claim preclusion, but we win on issue preclusion. And the reason is because—and then it just turns into a fog of nonsensical assertions as far as I can tell. Is that why we've got the privity language in there for purposes of trying to pick up issue preclusion? Yeah. It is. Well, why are you doing it that way? Why don't you just do it the simple, old-fashioned way? And, you know, in hindsight, it's always 2020, and that certainly is the way that it should go down, I believe. Yeah, but why aren't we bound by your adoption of the litigation position that privity controls here on everything? Because we did not adopt that position with regard to the general law of judgments for purposes—when we distinguish this case— Well, why should we allow you to use one definition of privity on one issue and a different definition on a different issue? That sounds a little duplicitous, a little too cute. It is—it was not meant to be duplicitous or cute, Your Honor. I think it reflects the fact that, as Judge Bryson said, the word privity is—you know, doesn't tell a whole lot. And as this Court said in Mars, the ultimate question is whether the relationship between the parties is such that one party should enjoy the benefit or suffer the burden of a judgment floor against another. And in this case, TransClean has yet to recover anything for the infringement— Why does it matter whether they recovered or not? Even if they had recovered, they could still sue downstream users who are separately infringing the patent. Certainly. Then why isn't that the theory of your case? Because the—well, I think that we did say, and we have said, that it's a different cause of action against the downstream users. We certainly did articulate that in our brief and below. Why does it matter whether you recovered or didn't recover? Well, I think that under—at least as I have read Birdsell and other cases, if you recover from the manufacturer, you then create the implied license, which, you know, would perhaps release, at least to some extent, the continuing use from the continuing infringement, which has occurred here. But you're not worrying about continuing because you've licensed as of 98, wasn't it, or whenever? Yeah, 98. Aren't you really just worrying about the pre-98? No, sir. Do I misunderstand that? No, Your Honor, because the units in issue here were sold pre-April 1st of 98, so that the units that are in issue here do not enjoy the benefit of the later license, the century sign. Okay, and they're still in use. They are still in use to our knowledge, yes, sir. Okay. Acknowledging for purposes of the question that $1.8 million is neither collected nor collectible, why doesn't that set the outer limits of your potential recovery, even assuming that you can have a separate cause of action against the defendants who either are or are not in privity? Because the damages analysis for determining the damages against the end users is completely different than the analysis that was used for determining the damages against the manufacturer. In the case against Bridgewood, we asked for a reasonable royalty of between one-third and one-half of the infringer's profits, and the excerpt from our expert's report in that case is at page A530, I believe, of the appendix. And as awarded, it worked out to about 16% of sales. In that case, there was a different point in time for determining, or in the original case, there was a different point in time for determining the hypothetical negotiation. There was no evidence of what the actual profits were of the users. In other words, what were these users actually making, what were their profits? That wasn't there. There was no evidence of the licensing practices of these users who are defendants here. And obviously, there was a much different length of infringement involved in that initial case than here. So this is like the—similar to the applied medical resources case. We believe in that because there are differing issues and differing sets of facts to be considered, the amount of damages to be determined is not something that has, with respect to these end users, is not something that has already been decided by the earlier case. But if you're suing Jiffy Lube and the others on the theory that they're joint tortfeasors with the manufacturer, then why shouldn't you be limited to the manufacturer's damages that weren't recovered? Because, as I said, the determination, the amount, is different. Well, it would certainly be different if it was an independent lawsuit that had nothing to do with the equipment manufacturer. But once you tie your cause of action to the manufacturer, why shouldn't you be stuck with the damages that were levied against them but not recovered because of their insolvency? Well, I think our tying with the original lawsuit is with respect to the prior findings with respect to validity and enforceability and infringement. The prior case did not include, and there was no consideration of, the specifics related to these particular end users. We sued this as a separate cause of action and as a separate action. We did not sue this out as simply an effort to, okay, they're joint and severally liable, so therefore make them pay us the earlier judgment. Let me see if I understand the breadth of your argument on this matter of the damages. Suppose, to take my example of Sears and the lawnmower, you sue Sears. You're Briggs and Stratton, let's say, and Sears is putting out lawnmowers that infringe your motor patent. You sue Sears and you get a recovery of, let's say, reasonable royalty from Sears. Can you then sue everybody, let's say, every lawn mowing service that has bought a lawnmower from Sears and get additional damages above and beyond the reasonable royalty you got from Sears? You're assuming that we collect from Sears? Yes. You've got full satisfaction of your reasonable royalty from Sears? I think that you would be in an arrow two case where the Supreme Court indicated that, well, we're going to remand to see if there is some additional damages, but we're not sure how you could possibly prove that there would be any. Right. Have you read our recent decision in Glen Eyre? Yes, sir. Are you familiar with that? Yes, sir. Why wouldn't the analysis in Glen Eyre speak directly to the question that would be posed in this situation? Because there are two differences. First off, in Glen Eyre, at least two differences. In Glen Eyre, the infringer collected. Well, okay, but I'm assuming in my Sears case that you collected. But isn't that the implication of a damage? In other words, you're getting a reasonable royalty from Sears. Now, the assumption is that the value of that reasonable royalty includes Sears' ability to sell those, not just Sears' pleasure in having them in the showroom, but their ability to sell them without being sued or without their customers being sued for buying them. Otherwise, what's the reasonable royalty getting them? Nothing. Well, I think that the hypothetical that you posit is different because you would have to assume that the date of the hypothetical negotiation with the Andrews' is the same and those sorts of things. I think that you would not necessarily be in an arrow two situation as discussed in Glen Eyre. I do believe that the discussion of the various cases of Birdsell and all that in Glen Eyre that we sort of – I mean, I can't disagree with the court's interpretation of those three Supreme Court cases. I think it is accurate, and I think that that's where we've always thought that we were. But you would at least like full compensation. So you go back to Birdsell and you say you're at least entitled to the 1.8, and you further say, contrary to the district court, that you don't have to actually come in and prove positive that you've been frustrated in your effort to collect. It's enough that you simply say, for whatever reasons, you've elected to move on to another defendant, and that defendant cannot erect the failure to actually collect as a defense against the second action. Certainly. We believe that we are entitled to go in and say, with respect to this group of defendants, here's the damages that should be awarded. Which is not the 1.8, which is now a whole new number. It could be. I mean, that's a question ultimately for determination by the fact finder. It certainly is our position that it's a different number. But it could be. If I may, there is one housekeeping matter I want to clarify for the court. In our briefs, we relied on the court's Juergens decisions, and I want to withdraw our reliance on those Juergens decisions. On a further reading, it's clear that they are distinguishable with respect to the issue of claim preclusion. And I apologize for that. My only solace is that my learned opponent did not notice the difference as well. Thank you, Your Honor. Thank you. Mr. Porodek. Thank you, Your Honor. I was going to begin exactly where Judge Bryson began, by pointing the court to the admission of privity. And I think that's what makes this case unique, and probably an easy claim preclusion case, because the privity element is the one that is always tricky in these cases. Is always what? The privity element is the trickiest element in these cases. So if you turn to page 25, just to be clear, because I think I'm hearing privity was admitted for certain purposes and not for other purposes. Page 25 of the blue brief, I think, is unambiguous. This is a trans claim citing to this Federal Circuit case, Amex, on claim preclusion, and saying, as Judge Bryson pointed out, the first element, which is privity, is met here. And then goes on to say, is the district court correctly noted? So it's saying the district court was right on this issue. Well, that was clearly a tactical decision on their part to get issue preclusion, and then they want to slip away from that concession. And I take it what you're saying is, no, no, we're not going to let them slip away from it. That's exactly it, Your Honor. It may have been a tactical decision, but it's when they're bound by, under a number of principles, starting at the district court level, the doctrine of judicial admission, which I'm sure you're familiar with. When statements are made in court pleadings under the sanction of perjury, or under the sanction, then you are bound by those statements. So there's a bunch of cases, including the Federal Circuit. If we're going to use the term privity at all, and I would love to see it dispensed with entirely. But if we're going to use it, does it not make sense to say that the same rules apply to both claim preclusion, issue preclusion, and enforcement of a judgment? That is to say, if party A and party B are in privity, that not only would each of them be encompassed within the rule of claim preclusion so you couldn't sue again, in effect, to the same party. Not only would they be subject to issue preclusion indisputably, but you would also be able to recover in a judgment against somebody who's in privity with the party against whom the judgment was originally entered. So looking at the enforcement context of privity. Is that, do you think, a fair way to confine the notion of privity? So that, in other words, if you aren't in a position to have that judgment enforced against you, then you're not in privity with the party. You know, you yourself, in the Mars case, talked about the fact-intensive nature of privity. I don't know if we can ever get to a specific broad statement of what privity means outside of the context of a case. And indeed, in Mars, you talked about the fact that in certain circumstances, a defendant's level of privity when stopping a cause of action against him is different from the one of inserting. You may recall that language. So I would hate to make a blanket statement. Fair enough. But, and I would say in this case, given what we see on page 25 and what happened in the litigation below, clearly the privity that was at issue in the admissions by Trans Court was plain confusion. Here's my problem with the admission. I mean, it seems to me that we have on the one hand a statement that, yes, there's privity here, but it's immediately followed by a disclaimer of the legal consequences that are normally associated with that statement. So I just don't know how far one can go by way of saying, aha, and pinning the concession when the concession seems so plainly to be associated with a legal argument that's squarely at odds with the concession. Well, the concession came in different places. It came in an interrogatory response, for instance, where that was just what are the facts supporting your allegations. And they said there's privity. When the elements tests were being talked about in briefs, there was the statement that Jiffy Lube is in privity. And for me, where it comes down to, I was going to give you the different doctrines that you're probably aware of, but judicial admission doctrine, certainly waiver doctrine on appeal is applicable here, I think, even if we're looking at it in a mix of law and fact. But what I go to and what I thought through in this case was what does the district court judge do on Rule 56? The district court judge has a record in front of him. Judge Magnuson had a record in front of him in which he has to look at a record constructed by the parties and see what is a disputed issue of fact. And privity was literally not disputed. And even more, it was affirmatively asserted by the party as an admission. And if you read Rule 56C, which I'm sure you're all familiar with, admissions of the parties are also something that are taken into account on Rule 56. So I don't know what Judge Magnuson could have done in his position. And ultimately, that's what we're here for. We're here to see if Judge Magnuson did what was right in his position. And on the issue of privity, I don't think he had anything that he could have done. Your argument is that he was led into whatever conclusions it leads to and that's what they're stuck with. Absolutely. Where does all of this leave the defaulting defendants? The defaulting defendants are, at this point, not beneficiaries of claim preclusion. They're beneficiaries of issue preclusion. And I was going to say a couple words about that. I believe the Glen Eyre case is absolutely consistent with what we've argued in our brief for the application of issue preclusion. I will also say— Why aren't they the beneficiaries of claim preclusion? Because they are asserted to be in privity. I think they could have been. The judge didn't go down that road. Well, why not? The judge added in his summary judgment order— summary judgment was initially only granted against Jiffy Lube because, as you can imagine, there's many of these smaller shops involved. And we were kind of taking the lead for a bunch of them. And many of them had not submitted papers that made it clear that, during the course of the litigation in Transclaim I, that Transclaim was aware of these other defendants. And the court wanted to make sure that that was the case for whatever reason, probably just a fairness reason. And Transclaim did, with respect to the non-defaulting defendants, did certify that they were aware. Transclaim was aware during the litigation about these other defendants. The defaulting defendants just procedurally weren't in that posture. Interestingly, though, when the defaulting judgment—the default damages were awarded at the end of this case, which led to this appeal. The judge said he was going to hold up the damages. Yeah, he said he was going to hold up issue preclusion. He didn't make the leap to claim preclusion. He made the point that I can raise this in my own instance. Claim preclusion and issue preclusion I can raise. But for some reason, perhaps just because these are defaulting defendants and no district court judge ever wants to bend over backwards for a defaulting defendant, Judge Magnuson didn't apply claim preclusion to them. I think, on principle, it could be done. My point of the defaulting defendants—I didn't expect I'd be talking so much about them— the damages determination is reviewed, I think, under a different standard of review than just de novo. In other words, this is the damages choice that the judge had before him. I can either accept a conclusory affidavit of $10,000 per machine, which is radically at odds with everything I know in this case based on what happened in Transclaim 1, or I can apply what this court did in Transclaim 1. And I think that's the fair thing to do. That could have been what he was thinking. He's thinking, let's keep this consistent with Transclaim 1. We'll treble the damages because of admission of willfulness. But that's one other way you can look at what the judge did. Going back to your client, what is—and with specific attention to Birdsell. Yes. Birdsell focuses on, of course, the full satisfaction doctrine. Yes. Why doesn't Birdsell apply without regard to whether claim preclusion would otherwise apply? Yeah. I mean, I think this court in the Mars case, the last paragraph of that case, I think explains why. And I actually have it because I anticipated a question like this. This is the last paragraph of the Mars case. Ultimately, Mars, the plaintiff in the Mars case, states its case on the proposition that a plaintiff may sue each distinct tortfeasor separately and that the liability of each gives rise to a separate cause of action that can support a separate suit for damages, which is what Transclaim's arguing here, essentially. They're saying Birdsell lets us do this. But the Mars court goes on with this conclusion. Well, that may be true as to unrelated parties. A plaintiff who chooses to bring two separate actions against two tortfeasors who are jointly responsible for the same injury runs the risk that the court will find the parties sufficiently related that the second action is barred by claim preclusion. Mars chose to run that risk in this case by not attempting to join Hippon Conducts, we've defined it in the second case, in the first action. We do not think it is unfair to hold Mars to the consequences of its action. How can it be said that Jiffy Lube and these other car repair companies that use the machine were joint tortfeasors with the company that manufactured the machine? How can we say that they are joint tortfeasors? Under this court's decision in Shockley, the discussion of tortfeasors down a distribution chain, this court concluded that in that situation, those people in the distribution chain are joint tortfeasors. That's the authority that they themselves cite for the principle that we will not be joint tortfeasors. I'm putting aside their arguments. I'm just trying to understand the fundamentals here. I guess it goes back to the Sears lawnmower purchased by Judge Bryson. Why would we think that an ordinary customer is a joint infringer with the maker of an infringing product? This is not looking at the privity issue as much as the same cause of action issue that we find in claim preclusion. The reason would be because you would have the exact same product and I assume the exact same patent being asserted. That would be the common nucleus of facts under this court's law in the Halco v. Foster and Foster v. Halco cases. Those two elements form a common nucleus of fact for claim preclusion on the issue of same cause of action. The question that Judge Bryson had, I believe, is would these parties be in privity? You would think probably not. In this case, what we have is we have a fact that there is privity. It's undisputed. That's what we have. The Morris case, if I recall correctly, was a case of a subsidiary and a parent. I think the Japanese parent and a U.S. subsidiary, which is the ultimate example of privity. Potentially, yes. Although not in all cases. Not in all cases, I understand. But it certainly isn't eye-opening to see an assertion of privity in that setting as it is in a setting like this. To me, it's so profoundly counterintuitive to say, well, this is privity that I'm having a hard time saying, while we accept that you have to treat this lawsuit as if it is a lawsuit against the same party. Right. Which is the implication. I understand the implication that the court has to be sensitive of is you don't want this case to be cited as the case where purchasers and manufacturers are always in privity. I think that's the issue that I would be concerned about if I ever got to a position. Your answer to the chief's question left me sort of puzzled because I thought the question was, why isn't it almost presumptively true that a suit by a patentee against a manufacturer of a product is independent from and unrelated to a suit by the patentee against downstream users of the product, absent some showing that they were in privity, whatever that may mean, some special relationship of some kind. But in the normal course, again the lawnmower case, if I go buy a lawnmower that happens to be an infringing product and the chief happened to own the company that manufactured the infringing product and Judge Bryson sues the chief, isn't it presumptively true that he can later sue me? I think if the parties were in privity for some reason, that would be... Well, I mean just on the facts I've given you. I never met the manufacturer, so I don't know anything about how it was manufactured. I just bought the mower and I'm using it. Under our patent law, am I not liable as an infringer and isn't the patentee entitled to sue all of us individually? Based on the assumption that there's absolutely no suggestion of privity and no admission of privity, I think they would be able to sue you separately, depending on the facts of the case. Depending on the facts of the case. Assuming no special relationship on which we can hang a privity. Legal or conceded. Absolutely. They can bring that to cause. That's a given. There would be the issue of whether they can start to collect judgments, multiple judgments. Or whether the initial judgment against the manufacturer, let's say, constitutes a full satisfaction, which is one of the problems that's looming in this case. Absolutely. That's the stickle problem. Yes, exactly. That's the stickle issue, and also Glen Eyre discusses it in great detail. Mr. Portek, your case, as I understand it, is essentially the opponent took a position which may or may not strike some people as totally absurd and a complete variance with the facts, but they made that choice. Litigation strategy. They should be stuck with it. I'm entitled to defend a judgment that's based on that, and Judge Magnuson is entitled to rely on that, whether or not it's ridiculous. But isn't there some point at which a court should not be allowed to adopt an argument made by a party if it's flagrantly wrong? Well, to answer your question, court parties admit things in litigation all the time. They'll admit infringement when they very well could have argued it for some technical reason. They'll admit validity in a consent judgment when they don't believe it. Well, I'm not talking about that. I'm talking about this party that said the manufacturer was in privity with everybody else downstream, consumers, users, when there's not a shred of evidence that I've seen anybody point to that that possibly could be true. I don't want to suggest that there's absolutely no evidence of privity that was developed before their admission, just to give you the idea that we're talking about, in both cases, the exact same property. I understand that it's the same product and the same limitations and the same claim and the same patent. But I think Judge Plager puts his finger on what, at least to me, is very important. If I'm the ultimate buyer and I go to the manufacturer and I say, here are the specs. I want you to make this thing for me. And the thing that I order the manufacturer to make for me, to buy from him, is plainly an infringing product, then, of course, I, as the customer, am just as guilty as the maker is. In fact, probably worse, because it may even be willful infringement. But in the case that he was referring to, Judge Plager was referring to it as the lawnmower case, and, of course, Judge Bryson started out with the example, where there's no relationship prior to the date of manufacture between the buyer and the maker of the machine. So the maker makes the machine totally of his own volition, totally according to his own specifications. The buyer and maker don't even know each other at this point. Then, years later, the buyer buys it. Now, if those are the facts, do you think we should countenance a district court accepting an assertion by any party that there is privilege? I think if a party makes the decision tactical for whatever reason, even if it isn't at odds with what people can consider as common sense, that is the way our system works. That is the way our system works. And there's no limit. There's no limit. If the party says black is white, the judge must accept it. If it's an undisputed fact on summary judgment, then that is the record before the court. I suppose that if this were 1920, then there might be some reason to think that there was privity here, because as I recall, and my history on this is a little shaky, but my recollection is before mutuality of estoppel was abolished, that the courts stretched privity very far in order to avoid the problem of lack of mutuality and to apply collateral estoppel, at least defensive collateral estoppel. Now, of course, privity has happily shrunk considerably. You're talking about an orthodox. I don't even know if it's a stretch. One of the recognized orthodox forms of privity is property privity. Right, but that's usually where the right inheres in the property. Now, one could argue, well, that's kind of what that law is about. But what we're really concerned about is an imposition of a burden on the rest, let's say, even if it's not an in rem proceeding, but it's some burden on the rest. And you take that property subject to the claims that have previously been raised with respect to that. Those claims come with the property. That's pretty different from this situation. The property was in our hands during the course of this litigation. From the beginning of the Transclaim I case during the Medicaid complaint, all the property had been transferred to administrators who knew nothing about this lawsuit. So immediately we're in a position where the subject matter of that litigation is exactly the property that we're continuing to use as we go on. So we're immediately getting to the point where you can start thinking about, is there some privity relationship? And as litigants, we would develop that factual record. We didn't do discovery on it because they admitted it. We asked an interrogatory request, and they admitted it. So from our perspective and from the court's perspective, I think it would be a troubling ruling for any appellate court to hear that you can't take admissions seriously in litigation. Otherwise, I won't be able to stop litigating issues based on fairly – there could be an absurdity test that I'd have to – You would agree that you can't concede facts for the purpose of granting a court jurisdiction that it wouldn't otherwise have? Yes. I'm not going to – for a second, subjective. Yes. But you're saying with the exception of that kind of limit on concessions, for purposes of conceding liability or some element of liability, it doesn't matter how different the facts are from the concession, the concession controls. Absolutely. If that isn't a rule, our system is in some trouble. Well, the point's been made. All right. Thank you. Mr. Anderson, we'll give you two minutes. Thank you, Your Honor. I first want to start by saying privity is simply a legal conclusion, and it is a conclusion that is reviewed de novo by this court. We've concluded that. Yes. Second, Jiffy Lube below argued that they were in the kind of special relationship, and this is at page A370 of the appendix, that they were in the kind of special relationship with the first litigation that supports the finding of claim preclusion. So they were saying that they were in privity themselves. And what we have always argued is that this is bird cell. There is not a single case in bird cell, in its progeny, in the circuit court cases applying bird cell, even in Glen Eyre that talks about privity as being one of the factors to be considered as to whether the bird cell situation applies. And both at the district court and at this court, in our opening brief on page 29, we said, in the context in which Mars was decided, i.e. involving general principles of claim preclusion, Bridgewood and the participating appellees are not sufficiently related for claim preclusion to apply. We have always taken that position, and moreover, we have also always said, as we argued in the district court and in this court, that for claim preclusion to apply, there is the fourth element, that it has to be the same cause of action. We have always said this is a different cause of action, that this is against the users, and that this is different than the situation in Mars, which they rely on, because in Mars, because it was a Japanese manufacturer, you couldn't sue them for manufacturing, so the claim that was being asserted was the exact same thing, with the exact same damages. Let me stop you there on the cause of action issue, because if it were the same party, that is to say it were, what was the name, the manufacturer of the bird cell, who not only manufactured, but also then used, same party, you wouldn't be making the argument that that's a different cause of action, would you? No. So the cause of action argument really goes away. The reason you're saying it's a different cause of action is really based on the fact that it's different parties, right? I guess yes. So that brings us right back to the privity problem. Well, but I think that you, I mean, in some respects, yes, but the fourth, in this case, because of the situation, the claim for the use, for the infringing use here, is one that was never litigated in the first action. And the fact that there may be a, you know, simply saying that there's privity doesn't tell us anything about what's the underlying facts, and there was absolutely nothing in the record to show or support that sort of legal conclusion, and indeed, we consistently said to the, because Jiffy Lube was arguing that they had the same sort of special relationship, that we said, no, we disagree. There isn't that special relationship. This is bird cell, and, you know, it's a question of privity in order to permit us, because we haven't collected on the judgment, to go and proceed against the end user. You do agree, as a matter of law, that you could concede privity and be bound by it, don't you? As a matter of law. As a matter of law, I think that is something that could be, you know, found, but in this case... It doesn't go to our jurisdiction or some other area that no concession can get to, but in terms of liability, if you intended to concede privity across the board, you were entitled to do that, weren't you? Yes, but that is not, our position is that is not what we intended to do and did not do here. I think that's clear with respect to the... So the fact that it's inconsistent with the facts is not the issue? It is to the extent that this court has de novo, has de novo review of that issue, I think, because we were focusing on and we argued that with respect to privity under the general law of judgments, they didn't have that special relationship. We focused on bird cell... When you say the general law of judgments, you mean the law of claim preclusion. I mean the general law of claim preclusion that doesn't seem to involve bird cell and its progeny, which relate to patent infringement cases and the ability of a patent holder to sue an end user when they haven't collected against the manufacturer. I think that the issue here is that if... I don't know how you could consistently apply bird cell and its progeny and this court's decisions in Shockley, etc., in this case, and deny TransClean a right for an injunction or any other ability to collect, to recover on this judgment. Indeed, if they're saying that there's imprivity, then I guess we should be able to simply go and say, here, pay the judgment. It's approved. And I don't hear them saying that that's the case. I think if they want to say, if they argue that there's privity, there's privity across the board, including an enforcement of the judgment as it exists with the approved interest. They can't have it both ways. You decided, it seems, to hang practically your whole case on bird cell. And bird cell seems to rely on the notion of joint tortfeasor without, as I recall, any discussion of privity beyond joint tortfeasor. Can you tell me why you think the defendant in the second suit in bird cell was correctly viewed as a joint tortfeasor? I don't think that the bird cell decision said that it was viewing the second entity as a joint tortfeasor. What the court said in Part 3 of that opinion was that if there is any argument that you can't proceed against the second, it's because there's been a full satisfaction of actual damages by the manufacturer. And I think that as that has Irrespective of their relationship? I think that, well, as you go down in the Arrow case, the Supreme Court said that the distinguishing or the deciding fact in both bird cell and Union Tool was that there had been no collection of the judgment against the manufacturer. And so then there was then no implied license that would flow on from that. So that's why there's been, I mean, you look at the cases and all of the preceding circuit court decisions before the existence of the Federal Circuit, and none of them that are applying bird cell discuss privity. I mean, quite honestly, you can't Or claim preclusion, for that matter. Or claim preclusion, for that matter. I mean, it's a peculiar disconnect, it seems to me, because you would think that the two concepts would pop up. It is something that, fortunately, we can say, this is what the Supreme Court has held, and it has been consistent, and it has been consistently applied and consistently interpreted, we think, by this court. And therefore, under bird cell, and we honestly believed in the district court that privity in the context of claim preclusion wasn't an issue because we kept on saying, this is bird cell, and if you want to argue the general law of judgment, such as in Mars, we said, this isn't that kind of special relationship. Bird cell is a gray opinion. I'm sorry, a gray opinion? Bird cell is a gray opinion. But you would say, well, forget about what Unclarity Bird Cell might have said. You at the Federal Circuit in Shockley have said what you think it means. Not only in Shockley, but in the Glen Eyre Electronics case, very recently. So you're saying we're stuck with Glen Eyre and Shockley no matter what bird cell may have meant or not meant. I mean, just as recently as this. We, the panel. We, this panel, stuck with those two cases. I mean, I think that those cases are precedents of this court, and they interpreted bird cell and its progeny, and I think that they interpreted it such that we would. But Glen Eyre didn't say, if I should remember, it's pretty recent, but my recollection is that the parties were both, in fact, and by hypothesis, different. Well, the part that was never addressed, that was a distinguishing feature. The distinguishing feature and the reason why the panel, as I read Glen Eyre, said that there was, that the patent holder could not proceed against the users was because it had accepted and received the full judgment before. Right, but. It had included in that initial case what the fuel problems were. But no one was arguing that they were the same parties and subject to claim preclusion. And no one would be making that argument here, but for your concession. Well, I will not concede that we conceded privity for purposes of the general law of judgments. Well, you keep saying the general law of judgments, but the pertinent part of the general law of judgments here is claim preclusion law. And I can't read page 25 of your brief any other way than to say that you've conceded privity for purposes of claim preclusion law. So if you walk away from the general law of judgments to the law of claim preclusion, then I do think you've pretty clearly conceded privity for that purpose. Except I would refer, Your Honor, to page 29 of our brief, where we then said that in the context of the general principles of claim preclusion, this is different. And that's what we also said when we did distinguish Mars and said Mars is not the situation here. And they were arguing that they had that special relationship, as in Mars, in their brief in the district court. And we said, no, you don't have that kind of relationship that existed in Mars. All right. Thank you very much. We'll take the case under advisement. The honorable court has adjourned until tomorrow morning, 10 AM.